IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**CHARLESTON DIVISION**

DWIGHT JOHNSON, et al.

               Plaintiffs,

v.                                                    CIVIL ACTION NO.  2:10-cv-00887

MANOR CARE INC., et al.

               Defendants.


**MEMORANDUM OPINION AND REMAND ORDER**

Pending before the Court is Plaintiff's Motion to Remand [Docket 8].  For the reasons set forth below, Plaintiff's motion is **GRANTED**.

*I.  BACKGROUND*

This case was originally filed in the Circuit Court of Kanawha County, West Virginia on or about May 27, 2010, by Plaintiff Dwight Johnson, individually and on behalf of the Estate and Wrongful Death Beneficiaries of Opal Estep ("Plaintiff").  In his complaint, Plaintiff alleges that Opal Estep suffered injuries, damages and death as a result of allegedly inappropriate care received while a resident at the Heartland of Charleston nursing home in Kanawha County.  The defendants, Manor Care, Inc.; HCR Manor Care Services, Inc.; Health Care and Retirement Corporation of America, LLC; Heartland Employment Services, LLC; Danny Davis, Vivian Kiraly and Jeffrey Smith ("Smith")[1] (collectively "Defendants") are alleged to be owners, administrators or otherwise

---

[1]  Smith was added as a defendant by an amended complaint filed by Plaintiffs on or about
(continued...)

affiliated with Heartland of Charleston.[2]  Plaintiff asserts a number of causes of action against Defendants, including negligence, violations of statutes, medical malpractice, malice or gross negligence, fraud, breach of fiduciary duty, and premises liability.

On July 7, 2010, Defendants filed a Notice of Removal [Docket 1], seeking to invoke this Court's diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441.  According to the Notice of Removal, Plaintiff is a West Virginia resident and all Defendants but Smith are citizens of states other than West Virginia.  However, Defendants contend that Smith is a fraudulently joined party and therefore should not be considered for jurisdictional purposes.  Plaintiffs disagree, arguing that Smith was not fraudulently joined.

Plaintiffs timely filed the pending motion to remand [Docket 8] pursuant to 28 U.S.C. § 1447(c) on July 19, 2010.  On August 2, 2010, Defendants filed a response [Docket 12] in opposition to the motion to remand.  The motion is now ripe for the Court's consideration.

## II.  DISCUSSION

United States "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28 U.S.C. § 1332(a)(1).  "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district

---

[1](...continued)
June 7, 2010, approximately one month prior to removal.

[2]  "John Does 1 Through 10; and Unidentified Entities 1 through 10" are also named as defendants in the case, but there is no indication that these parties have been further identified thus far and they play no role in the decision contained herein.

2

and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).  Generally, the party seeking removal bears the burden of showing that federal jurisdiction exists.  *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994).  Because removal jurisdiction is strictly construed, all doubt is resolved in favor of remand.  *Id.*

The asserted basis of the Court's jurisdiction over this removed action is that there is complete diversity of citizenship among the parties and the amount in controversy exceeds the jurisdictional threshold.  28 U.S.C. § 1332(a).  The amount in controversy requirement is not at issue, but the parties disagree as to whether complete diversity exists.  The complete diversity requirement is satisfied "when no party shares common citizenship with any party on the other side." *Mayes v. Rapoport,* 198 F.3d 457, 461 (4th Cir. 1999).  Plaintiffs and Defendant Smith are citizens of West Virginia, which suggests that complete diversity does not exist.  However, if Smith is a fraudulently joined party, then his citizenship is irrelevant to the jurisdictional analysis.  *Hartley v. CSX Transp.*, 187 F.3d 422, 424 (4th Cir. 1999).

Fraudulent joinder requires neither fraud nor joinder.  Rather, it is "a term of art [which] does not reflect on the integrity of plaintiff or counsel, but is merely the rubric applied when a court finds either that no cause of action is stated against [a] nondiverse defendant, or in fact no cause of action exists."  *AIDS Counseling & Testing Ctrs. v. Group W Television, Inc.*, 903 F.2d 1000, 1003 (4th Cir. 1990); *cf. Smallwood v. Ill. Cent. R.R.*, 385 F.3d 568 (5th Cir. 2004) (adopting term "improper joinder" as more accurate than "fraudulent joinder").  To show that a nondiverse defendant has been fraudulently joined, "the removing party must demonstrate either 'outright fraud in the plaintiff's pleading of jurisdictional facts' or that 'there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'"  *Hartley*, 187 F.3d at 424

3

(quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993) (emphasis in original)).

"The party alleging fraudulent joinder bears a heavy burden—it must show that the plaintiff cannot

establish a claim even after resolving all issues of law and fact in the plaintiff's favor." *Hartley*, 187

F.3d at 423.  In fact, the fraudulent joinder standard "is even more favorable to the plaintiff than the

standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Mayes*, 198 F.3d at 464.

Accordingly, "[a] claim need not ultimately succeed to defeat removal; only a possibility of a right

to relief need be asserted." *Marshall*, 6 F.3d at 233; *see also Hartley*, 187 F.3d at 426 ("Once the

court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends.").  In deciding

whether fraudulent joiner has been committed, the court need not limit its jurisdictional inquiry to

the facts alleged in the pleadings; the entire record may be considered as a whole in determining

whether there is a basis for joinder.  *Mayes*, 198 F.3d at 464; *see also AIDS Counseling & Testing

Ctr. v. Group W Television, Inc.*, 903 F.2d 1000, 1003 (4th Cir. 1990) (citing *Dodd v Fawcett

Publ'ns., Inc.*, 329 F.2d 82, 85 (10th Cir. 1964)).

West Virginia law guides the Court in determining whether there is any possibility that

Plaintiff would be able to establish a right to relief against Smith in state court.  *Erie R.R. v.

Tompkins*, 304 U.S. 64 (1938); *see also Hartley*, 187 F.3d at 425.  Plaintiff does not argue that Smith

was named as a defendant in an act of outright fraud.[3]  Thus, the Court will look to see if Plaintiff

---

[3] Defendants alleged in their notice of removal that the naming of Smith as a Defendant in this matter was an act of "outright fraud" because Smith acted as an interim administrator at Heartland only after the death of Opal Estep and did not hold the position of an actual administrator until more than a year later.  However, in their response to Plaintiff's motion to remand, Defendants acknowledged that Smith was actually an assistant administrator at Heartland, in addition to being a duly licensed as an administrator, for the last year of Estep's residency.  In that document, Defendants did not specifically advance an "outright fraud" argument, focusing primarily on Plaintiff's inability of to establish a claim against Smith.

(continued...)

would be able to establish a cause of action against Smith.

The facts upon which the potential claim against Smith turn are developed at length in the parties' briefing, but are largely undisputed.  Opal Estep was a patient at Heartland of Charleston from January of 2003 to the date of her death, July 27, 2008.  During approximately the last year of Ms. Estep's time at the nursing home, West Virginia resident Smith served as the Assistant Administrator of the facility.  In that capacity, Smith had responsibilities that at least touched upon patient care and also served in the capacity of the administrator in that person's occasional absence.  The administrator is responsible for all aspects of the nursing home operation, including the oversight of patient care.  It is likewise undisputed that Smith possessed a West Virginia nursing home administrator license during the relevant time period.

The question presented by these facts is whether Smith is subject to personal liability as a result of his responsibilities to Ms. Estep while she was in the care of the facility of which he was assistant administrator for the last year or so of her life.  Defendants, in their response, explicitly state that they "do not dispute that Mr. Smith had duties to the residents of Heartland of Charleston or that a standard of care attaches to him."  (Docket 12 at 4.)  In essence, Defendant's fraudulent joinder argument boils down to the premise that Smith cannot be sued because he was *an*

---

[3](...continued)
To the extent that Defendants meant to continue to allege "outright fraud in the pleading of jurisdictional facts" and simply failed to do so clearly, it is apparent to the Court that any distinction drawn between Smith and the other named Defendants in the category of  "administrators" named in the complaint is simply an overly technical parsing of semantics.  Moreover, Defendants' notice of removal belies any assertions of outright fraud; as described  in the notice, Smith was added as a defendant in this matter less than one week after he was deposed by Plaintiff's counsel, when his tenure as an assistant administrator at Heartland would have become apparent, and more than one month before the case was removed.

administrator, but not *the* administrator.   However, Defendants cite no authority for such a distinction in West Virginia law.

At the very least, Plaintiff has alleged a cause of action for negligence against Smith in Count Three of the amended complaint.  "To prevail in a negligence suit, the plaintiff must prove by a preponderance of the evidence that the defendant owed a legal duty to the plaintiff and that by breaching that duty the defendant proximately cause the injuries of the plaintiff."  *See, e.g., Strahin v. Cleavenger*, 603 S.E.2d 197, 205 (W. Va. 2004) (citing *Webb v. Brown & Williamson Tobacco Co.*, 2 S.E.2d 898, 899 (W. Va. 1939)).

The amended complaint adequately alleges a variety of common law duties owed by the administrator defendants, including Smith.  As noted above, the existence of such duties appears to be conceded by Defendants.  Further, the amended complaint alleges at length various breaches of these duties, and that these breaches resulted in injuries to, and ultimately the death of, Opal Estep.  Therefore, it appears that there is at least a possibility, and likely more than a probability, that Plaintiffs have asserted a valid claim for common law negligence against Smith.  At the very least, it cannot be said that there is no possibility that Plaintiffs can establish a claim against Smith.  *Hartley*, 187 F.3d at 424.

Likewise, there may be another possible theory of negligence available to the Plaintiff.  Violation of a statute is prima facie evidence of negligence in West Virginia.  *See, e.g., Shaffer v. Acme Limestone Co., Inc.*, 524 S.E.2d 688, 701 (W. Va. 1999).

6

Smith was presumably licensed under Chapter 30, Article 25 of the West Virginia Code, relating to Nursing Home Administrators.[4]  *See* W. Va. Code § 30-25-5.  Under that article, a "nursing home administrator" is defined as "a professional who is an individual responsible for planning, organizing, directing and controlling a nursing home, or who in fact performs such functions . . . whether or not such functions are shared with one or more other persons."  W. Va. Code § 30-25-1(2).  This definition alone may be sufficiently broad to overcome Defendants' argument that only *the* administrator may be held liable.

Article 25 further establishes the West Virginia Nursing Home Administrators Licencing Board and gives the board certain duties and responsibilities, including the investigation of various violations and the authority to suspend or revoke a nursing home administrator's license for violations that come to light as result of an investigation.  *See* W. Va. Code §§ 30-25-7, -8.  Among other things, a nursing home administrator's license may be suspended or revoked for failing to comply with W. Va. Code § 16-5C-1, *et seq.*, which sets forth statutory authority for regulation of nursing homes.  Section 16-5C-5 authorizes the promulgation of regulations of nursing homes that touch upon patient care, safety and sanitation, among other issues that appear to be raised in the amended complaint.  There is therefore the possibility that Plaintiff could assert a violation of statute as a theory of liability against Smith.

Thus, there is at the very least a possibility that Plaintiff can establish a claim against Smith.  As Plaintiff and Smith are both West Virginia residents, diversity jurisdiction is lacking and this case must be remanded.

---

[4] Since the events of this case, Chapter 25 was rewritten and amended in 2010.  However, the citations to this chapter contained herein are to the version of the statutes in effect at the time of the alleged facts giving rise to Plaintiff's amended complaint.

7

*III.  CONCLUSION*

For the reasons stated herein, the court finds that it is without subject matter jurisdiction in this matter and Plaintiff's motion to remand [Docket 8] is **GRANTED.**  Accordingly, it is hereby **ORDERED** that this action should be and hereby is **REMANDED** to the Circuit Court of Kanawha County, West Virginia, and the Clerk is **DIRECTED** to send a certified copy of this Order to the Clerk of the Court of Kanawha County.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        March 31, 2011

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

8